**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

**MEDTRONIC SOFAMOR DANEK USA, INC.**,

Plaintiff,

v.

**RIVER CITY SPINE, LLC; HUNTER BAILEY; AND CAMERON KINCAIDE**,

Defendants.

Case No. 2:25-cv-02474-BCL-tmp

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR PARTIAL DISMISSAL**

Before the Court is Defendants River City Spine, LLC ("River City"), Hunter Bailey ("Bailey"), and Cameron Kincaide's ("Kincaide") ("Defendants") Motion for Partial Dismissal, filed June 11, 2025.[1] Doc. 17. For the following reasons, Defendants' Motion is **DENIED in part** and **GRANTED in part**.

**BACKGROUND**

Plaintiff Medtronic brings this action against Defendants River City Spine, LLC, Hunter Bailey, and Cameron Kincaide for breach of contract, anticipatory repudiation, declaratory judgment, and conversion. Doc. 1.tronic engages in the research, development, marketing, and sale of spinal surgery products used by physicians to treat spinal disorders and injuries throughout the United States and globally. *Id.* at 3. Medtronic sells its spinal surgery products through a

[1] This matter was originally assigned to Judge Mark S. Norris. Doc. 2. Judge Norris transferred the case to the undersigned in March 2026. Doc. 42.

combination of Medtronic employees and third-party distributors. *Id*. at 4. River City is a distributor of spinal surgery products. *Id*. Bailey and Kincaide are its owners. *Id*.

Effective July 13, 2023, Medtronic entered into an Exclusive Independent Manufacturer's Representative Agreement ("Agreement") with River City, Bailey, Kincaide, and Edward Sharp. *Id*. Under the Agreement, Medtronic granted River City exclusive distributor rights to market and sell Medtronic's spinal surgery products to designated "Assigned Accounts" in central and south Texas. *Id*. The Agreement set a fixed initial term through the close of business on April 24, 2026, with provisions for automatic renewal. *Id*. at 2. The Agreement required River City and its principals to devote their "best efforts" to soliciting sales of Medtronic products and contained non-competition, non-solicitation, exclusivity, and confidentiality restrictions. *Id*. at 5-6, 7-10.

Medtronic alleges that during the term of the Agreement, Defendants engaged in multiple contractual breaches. *Id*. at 10-13. Specifically, Medtronic claims that Defendants diverted business away from Medtronic by improperly soliciting physicians, including Dr. Fassil Mesfin, Dr. Jason Hall, Dr. Ian McDougal, and Dr. George Galvan, to purchase unapproved competing spinal surgery products from Orthofix/SeaSpine in collusion with BTS Distributing LLC and its principal Matthew Padron. *Id*. at 11-13. Medtronic further alleges that Defendants violated their non-solicitation obligations by soliciting River City sales representatives and Medtronic employees to leave their employment to work for BTS Distributing. *Id*. at 12-13.

On February 6, 2025, Defendants sent a letter to Medtronic attempting to terminate the Agreement immediately. *Id*. at 10. Medtronic responded on February 10, 2025, explaining that the Agreement did not permit early termination by Defendants and confirming Medtronic's intent to continue honoring the contract. *Id*. Medtronic asserts that Defendants' breaches have caused

significant financial harm, including lost profits, employee retention and replacement costs, increased commissions, and missing product and instrument inventory. *Id*.

Defendants filed the present Motion to Dismiss on June 11, 2025. Doc. 17. Defendants argue that Plaintiff's claims do not amount to breaches of the Agreement. Plaintiff filed a Response in Opposition on July 9, 2025. Doc. 18. Defendants filed a Reply on July 23, 2025. Doc. 20.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility requires more than factual allegations that demonstrate "a sheer possibility" of unlawful conduct or are "'merely consistent with' a defendant's liability." *Id*. If the factual allegations "do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not show[n] that the pleader is entitled to relief" and cannot survive a motion to dismiss. *Id*. at 679.

In determining whether the complaint states a plausible claim, the district court must accept the well-pleaded factual allegations in the complaint as true. *Id*. at 678-79. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. In undertaking that analysis, the court "must focus only on the allegations in the pleadings." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). "A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

## LEGAL ANALYSIS

The Agreement is governed by Tennessee law. Doc. 1-2 at 2. "In order to make a prima facie case for a breach of contract claim [under Tennessee law], a plaintiff must allege: (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Whitworth v. City of Memphis*, 689 S.W.3d 579, 584 (Tenn. Ct. App. 2023) (internal quotations omitted).

"When courts are determining the terms of a contract, they are to ascertain the intent of the parties based on the ordinary and natural meaning of the words used in the instrument." *Barnes & Robinson Co. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006). If the terms used in an instrument are ambiguous the court must then resort to rules of construction. Terms are not ambiguous, however, merely because the parties disagree as to the interpretation of a given clause. *Id.* "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Farmers–Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

Defendants seek dismissal of Plaintiff's claims to the extent they seek recovery based on:

1. Termination of the Agreement;
2. Sales of products the Agreement allows them to sell; and
3. Alleged solicitations of individuals who are not Plaintiff's employees or Sales Representatives.

Doc. 17. Plaintiff attached the Agreement to its Complaint, therefore incorporating the Agreement into the pleadings for purposes of this Motion. Doc. 1-2; Fed. R. Civ. P. 10(c).

### I. Termination of the Sales Agreement (Count I)

**a.** Defendants assert that Sections 14(B) and (E) of the Agreement together (i) recognize that either Party may terminate the Agreement; and (ii) precludes either Party from

recovering damages from the other Party that result from or are caused by that other Party's termination of the Agreement. Doc. 17 at 1.

Section 14(B) states:

> Duties Upon Termination. Upon termination of this Agreement for any reason by any Party:
>
> i. Company and Principal will immediately discontinue all sales and marketing activities of MSD Products and will no longer represent themselves as representatives of, or otherwise associated with MSD.
>
> ii. Upon MSD's written request, Company will, within fifteen (15) days after the date of the request, provide MSD with a written inventory of any and all MSD Products.
>
> iii. For any sales of MSD Products with delivery occurring before the effective date of termination, MSD will pay commission(s) on such sales only if Company submits the applicable documentation and MSD issues an invoice within thirty (30) days of the termination date.

Section 14(E) states:

> NO PARTY WILL BE LIABLE TO ANY OTHER PARTY FOR DAMAGES OF ANY KIND RESULTING FROM OR CAUSED BY SAID TERMINATION, INCLUDING, BUT NOT LIMITED TO, DAMAGES RELATED TO LOSSES THROUGH COMMITMENTS OR OBLIGATIONS OR LEASES, LOSS OF INVESTMENT, OR PRESENT OR PROSPECTIVE PROFITS, INABILITY TO MEET OBLIGATIONS, OR ANY OTHER CAUSES OR REASONS WHATSOEVER.

Doc. 1-2 at 14. In response, Plaintiff argues that it alone reserves the right to termination of the Agreement, relying on Section 14(A) which states that "MSD may terminate this Agreement without cause by giving Company or Principal ninety (90) days' notice of termination via electronic mail." *Id.* at 13.

Section 14(A) describes in detail when and how Medtronic may terminate the Agreement, including with cause and without cause. *Id*. Within Section 14, but under their own subheadings, subsections (B) and (C) include language that refers to all parties as it relates to the termination of

the Agreement: "Upon termination of this Agreement for any reason by *any* Party." *Id*. at 14. However, there is no comparable section that grants "any Party," other than Medtronic, the ability to terminate the Agreement with or without cause.

Given the Agreement's express term allowing Plaintiff to terminate "without cause," and the lack of any similar provision broadly giving such a right to Defendants, the most reasonable interpretation of the Agreement is that Defendants possessed general no right to terminate without cause, divorced from the end of a set contractual term (see below). The follow-on provisions (Subsections (B), (C), and (E)) then relate the Parties' obligations and rights in the event of a contractually authorized termination. Subsection (E) makes that express, referring back to "said termination"—that is, a termination provided for in the previous sections.

The Court need not decide at this point whether that is the only permissible reading of the Agreement, or whether the contract is instead ambiguous. Either way, the Motion to Dismiss Count I must be **DENIED**.

**b.** Defendants also fail in arguing that the Agreement is perpetual in nature and therefore terminable at will. Doc. 17-1 at 9 (citing *Open Lake Sporting Club v. Lauderdale Haywood Angling Club*, 511 S.W.3d 494, 501 (Tenn. Ct. App. 2015)). Section 13 explicitly states that the Agreement will expire at the end of Fiscal Year 2026 and that the term "will be automatically renewed for an additional sixty (36)[2] months upon the expiration of the Initial Term." Doc. 1-2 at 12. As the Court of Appeals of Tennessee explained in *Open Lake*:

> Under the general rule, where an agreement provides in general terms for a renewal, it shall be construed as providing for only a single renewal. E.g., *Pults*, 745 S.W.2d at 147 (citation omitted). Moreover, whenever there is any uncertainty as to whether an agreement was intended to be renewable in perpetuity, it "will nevertheless be construed as importing but one renewal[.]" *Id*. (citation omitted); *see also Ginsberg*, 141 Cal.Rptr.3d at 79 (opining that this "longstanding rule" of construction is a

[2] So in original. Obviously the provision of two separate time periods creates some ambiguity, but the Parties have made nothing of it thus far.

> "better approach" than remanding the case to the trial court to allow it to consider extrinsic evidence).

*Open Lake Sporting Club*, 511 S.W.3d at 503 (internal citations omitted). Even if the automatic renewals here might be viewed as repeating perpetually—a conclusion with some support in the reference to "one-year periods," plural—the fact that there are set terms, including an initial term ending with fiscal year 2026, forecloses any argument that Defendants were free to terminate the contract at any time, no questions asked. (Otherwise, why include terms at all?)[3] More to the point, Defendants have not drawn the Court's attention to any case holding that, under Tennessee law, a party may terminate a renewable contract at will, even if in the middle of a set and defined term. Absent authority supporting that conclusion, the Court will not impose it, as it would seem to render the Agreement's identification of specific terms superfluous.

Defendants therefore cannot obtain dismissal on this basis. confirming that it would be improper to dismiss Count I's claim for breach by termination.

## II. Sales of Products (Counts III and IV)

Defendants argue that Section 4(B) of the Agreement permits Defendants to sell medical devices created by certain companies that compete with Plaintiff (the "Current Manufacturers") during (i) the Agreement; and (ii) any non-competition period that follows the Agreement's termination. Doc. 17 at 2. They assert that the Complaint fails to allege that Defendants sold any products outside of those associated with the Current Manufacturers, and thus fails to allege that Defendants' sales of products amount to breach. Doc. 17-1 at 11.

The relevant portion of the Agreement states:

> MSD understands that Company, at the time of execution of this Agreement, is engaged in sales or other promotional activities for the companies as further

[3] Moreover, to the extent the contract envisions multiple renewals, the termination presumably would be tied to the end of a specific term as identified in the contract—not whenever Defendants choose to terminate.

> described in Annex C ("Current Manufacturers"). Company and Principal represent and warrant that they do not currently engage in Competitive Activities (as defined above), and will not engage in Competitive Activities, with any company not identified in Annex C as a Current Manufacturer during the Restrictive Period. MSD consents for Company to continue to engage in sales or other activities with the Current Manufacturers during and after the termination of this Agreement.

Doc. 1-4 at 4. Annex C, in turn, identifies specific products associated with specific manufacturers, indicating that the authorization to solicit sales of Current Manufacturers' products is limited to those products identified in the very Annex C referred to in the Agreement.

The Complaint states:

> In addition, during the term of the Agreement, River City has been soliciting and supporting the sale of Orthofix/SeaSpine products which are not approved in Annex C to the Agreement. On February 12, 2025, River City covered a case for Dr. Jason Hall at Brooke Army Medical Center using Orthofix/SeaSpine pedicle screws. Orthofix/SeaSpine pedicle screws are not, and have never been, approved in Annex C to the Agreement. On February 13, 2025, River City covered a case for Dr. Ian McDougal at Brooke Army Medical Center using Orthofix/SeaSpine pedicle screws. On April 25, 2025, River City covered a case for Dr. Hall at Brooke Army Medical Center using the Orthofix/SeaSpine posterior cervical system. The Orthofix/SeaSpine posterior cervical system is not, and has never been, approved in Annex C to the Agreement.

Doc. 1 at 12. The Complaint clearly alleges that Defendants have been soliciting sales of products that are not approved under the Agreement. Therefore, Defendants' Motion as to Counts III and IV is **DENIED**.

### III. Solicitations (Count V)

Defendants state that Section 4(C) of the Agreement prohibits the Parties from soliciting, inducing, recruiting, or encouraging "any of the other Party's employee(s) or Sales Representative(s) to leave their employment," either for themselves or any other person or entity. Doc. 17 at 2. They argue this contractual provision precludes any claim that Defendants improperly solicited *Defendant River City's own* employees as they do not qualify as "*the other Party's* employee(s) or Sales Representative(s)." *Id*. (emphasis added). The relevant provision states:

> Non-solicitation Covenant. During the Term of this Agreement and for a period of eighteen (18) months following termination of the Agreement ("Restrictive Period"), the Parties, either directly or indirectly, will not solicit, induce, recruit or encourage any of the other Party's employee(s) or Sales Representative(s) to leave their employment, either for themselves or any other person or entity. Company will ensure all Sales Representatives comply with all of the applicable provisions of this Section 4(C).

Doc. 1-2 at 7.

Defendants have it right. On the plain language of the Non-Solicitation Covenant, Defendant River City's own employees and agents would not naturally count as "the other Party's [Plaintiff's] employee(s) or Sales Representative(s)." *See Bearing Distributors, Inc. v. Gerregano*, No. M202001075COAR3CV, 2022 WL 40008, at *7 (Tenn. Ct. App. Jan. 5, 2022) ("When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." (quoting Scalia and Garner, Reading Law: The Interpretation of Legal Texts 147 (2012)). And "Sales Representative" is a defined term limited to Defendant River City's employees and agents: "'Sales Representative' means an individual person employed by or under contract with Company[4] to render services in connection with the sale of MSD Products." Doc. 1-2 at 6.

As relevant here, the Agreement thus forbid Defendant River City from poaching Plaintiff's employees, not its own employees and agents. And yet the Complaint alleges that River City, Bailey, and Kincaide have breached the non-solicitation provision in Section 4(C) of the Agreement by directly or indirectly soliciting, inducing, recruiting, and/or encouraging *River City's Sales Representatives* and/or Medtronic's employees to leave their employment to work for BTS Distributing." Doc. 1 at 16-17 (emphasis added).

[4] "'Company' means River City Spine LLC and its Principals, owners and directors, its officers and other employees and agents, and its authorized independent contractors, authorized sub-distributors and any other individual or entity acting through or on behalf of Company to discharge the Company's obligations under the Agreement." Doc. 1-2 at 4.

To the extent Plaintiff relies on Section 4(C) to allege a breach based on "soliciting, inducing, recruiting, and/or encouraging River City's Sales Representatives," the Agreement bars relief based on its plain language. Therefore, Defendants' Motion is **GRANTED** in regard to allegations of solicitation of River City's own employees and Sales Representatives.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Dismissal (Doc. 17) is **DENIED in part** and **GRANTED in part**. It is **GRANTED** with respect to any claim under Count V that Defendants breached the Agreement in recruiting or soliciting Defendant River City's own agents or employees. The Motion is otherwise **DENIED**.

**SO ORDERED**, this 30th day of September 2026.

*s/Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE